Adam J Schwartz (SBN 251831)
ADAM J SCHWARTZ, ATTORNEY AT LAW
5670 Wilshire Blvd., Suite 1800
Los Angeles, CA 90036
Phone: (323) 455-4016
E-service: adam@ajschwartzlaw.com

*Attorney for Plaintiffs William Loftus and Deborah Schick*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM LOFTUS and DEBORAH SCHICK, on behalf of themselves and all others similarly situated, | **Case No.** |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| FARMERS GROUP, INC.; JOHN M. HILLAND INSURANCE AGENCY, INC.; ASIF SHAH; GREG SAFADY, | |
| Defendants. | |

COME NOW, plaintiffs William Loftus ("Loftus") and Deborah Schick ("Schick"), who file this complaint against defendants Farmers Insurance Group, Inc. ("Farmers"), John M. Hilland Insurance Agency, Inc. ("Hilland"), Asif Shah ("Shah"), and Greg Safady ("Safady"), alleging as follows:

///

///

///

## NATURE OF THE ACTION

1.      Defendants placed prerecorded telemarketing robocalls to Plaintiffs' cellular telephone numbers without their prior express consent in violation of the Telephone Consumer Protection Act, 47 U.S.C.§ 227 (hereinafter, "TCPA") and applicable regulations, 47 C.F.R. § 64.1200.

2.      Plaintiffs bring this action for statutory damages and injunctive relief on behalf of themselves and a class of similarly situated individuals, as more fully described herein.

## JURISDICTION AND VENUE

3.      This Court has federal question jurisdiction pursuant to 28 U.S.C., §1331 and 47 U.S.C. § 227 *et seq.*

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

5.      Loftus is, and at all times mentioned herein was, an individual and a resident of Thousand Oaks, CA.

6.      Schick is, and at all times mentioned herein was, an individual and a resident of Scottsdale, AZ.

7.      Farmers is, and at all times mentioned herein was, a Nevada corporation with its principal place of business in Los Angeles, CA.

8.      Hilland is, and at all times mentioned herein was, an Arizona Corporation, with its principal place of business in Mesa, AZ

9.      Shah is, and at all times mentioned herein was, an individual operating a sole proprietorship with a principal place of business in Los Angeles, CA.

10.     Safady is, and at all times mentioned herein was, an individual operating a sole proprietorship with a principal place of business in Thousand Oaks, CA.

## THE TCPA

11.     Congress enacted the TCPA in 1991 in response to a growing number of consumer complaints about prerecorded robocalls.

12.     Congress enacted the TCPA to prevent real harm.  Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

13.     Accordingly, the TCPA prohibits all non-telemarketing calls using a prerecorded voice to cellular telephone numbers, unless those calls are placed with the prior express consent of the called party or placed for emergency purposes. 47 U.S.C. § 227(b)(1)(A).

14.     With respect to telemarketing calls, prerecorded voices cannot be used unless the called party provided prior express written consent. 47 C.F.R. § 64.1200(a)(2).

15.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

16.     "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf.

17.     In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls,

compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

18.    *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Him*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-many-robocalls-heres-what-you-can-do-about-him-1530610203.

19.    Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

20.    According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 at a rate of 168.8 million per day. www.robocallindex.com (last visited May 17, 2019). YouMail estimates that 2019 robocall totals will exceed 60 billion. *See id.*

21.    The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

## VICARIOUS LIABILITY UNDER THE TCPA

22.    "The Federal Communications Commission has ruled that, under federal common law principles of agency, there is vicarious liability for TCPA violations." *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 674 (U.S. 2016) (internal citation omitted*); see also Smith v. State Farm Mutual Automobile Insurance Company*, 30 F.Supp.3d 765, 774 (N.D.Ill., 2014) (regardless of whether the FCC Ruling binds the

Court or is merely persuasive authority, the Court finds that the FCC's determination that an entity may be vicariously liable for violation of section 227(b) under a broad range of common-law agency principles is correct."

23.     Thus, "a seller may be liable for violations by its representatives under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In the Matter of the Joint Petition filed by Dish Network, LLC*, 28 F.C.C. Rcd 6574, 6584 ¶ 28, (F.C.C. May 9, 2013))

24.     The FCC reasoned that without vicarious liability a seller could "avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties [leaving] consumers in many cases without an effective remedy for telemarketing intrusions." *Id*. at 6588 (¶ 37). It also reasoned that "the seller is in the best position to monitor and police TCPA compliance by third-party telemarketers. We thus agree that, consistent with the statute's consumer protection goals, potential seller liability will give the seller appropriate incentives to ensure that their telemarketers comply with our rules." *Id*.

25.     "Potential liability under general agency-related principles extends beyond classical agency." *Id* .at 6586 (internal citations omitted). For instance, "vicarious liability for TCPA violations in the telemarketing context may be found where "the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct." *Id*. at 6592.

## FACTUAL ALLEGATIONS

26.     At all times relevant herein, Loftus was the primary user of the telephone number xxx-xxx-8898, which was assigned to cellular telephone service at all times referenced herein.

27.     Between June and September 2020, Loftus received numerous telemarketing robocalls on the 8898 number, which were placed for the purpose of promoting and selling Farmers's insurance products.

28.     These calls utilized soundboard technology, in which numerous prerecorded voices messages are played throughout the call in order to gauge the called party's interest in the product being sold, before transferring the called party to a live person.

29.     One of these soundboard calls took place on July 29, 2020.  During this call, Plaintiff stayed on the line until he was transferred to a live person who claimed to work for Farmers, and who continued to promote and attempt to sell Farmers's insurance products.

30.     As a direct result of this call, Loftus received an email from Shah bearing the Farmers logo, which further promoted and attempted to sell Farmers's insurance products.

31.     Another one of these soundboard calls took place on September 15, 2020. During this call, Loftus stayed on the line until he was transferred to a live person who claimed to work for Farmers, and who continued to promote and attempt to sell Farmers's insurances products

32.     As a direct result of this call, Loftus received an email from Safady, bearing the Farners logo, which further promoted and attempted to sell Farmers's insurance products.

33.     At all times relevant herein, Schick was the primary user of the telephone number xxx-xxx-3945, which was assigned to cellular telephone service at all times referenced herein.

34.     On September 23, 2020, Schick received a telemarketing robocall on the 3945 number, which were placed for the purpose of promoting and selling Farmers's insurance products.

35.     This call utilized soundboard technology, in which numerous prerecorded voices messages are played throughout the call in order to gauge the called party's interest in the product being sold, before transferring the called party to a live person.

36.     During this call, Schick stayed on the line until she was transferred to a live person, who claimed to work for Farmers, and who continued to promote and attempt to

1  sell Farmers's insurance products.

2      37.    As a direct result of this call, Schick received an email from Hilland,

3  bearing the Farmers logo, which further promoted and attempted to sell Farmers's

4  insurance products.

5      38.    Plaintiffs did not provide prior express written consent to receive these

6  telemarketing calls.

7      39.    Defendants' robocalls harmed Plaintiffs by invading their privacy.

8      40.    Defendants' robocalls harmed Plaintiffs by interfering with their use of

9  their cellular telephones.

10     41.    Defendants' robocalls harmed Plaintiffs by wasting their time.

11     42.    At all times relevant herein, Hilland, Shah, and Safady were agents of

12  Farmers, who regularly acted on Farmers' behalf in seeling Farmers's insurance

13  products and subject to Farmers's control.

14     43.    Hilland, Shah, and Safady acted within the scope of their authority in

15  promoting Farmers's insurance products via prerecorded telemarketing calls.

16     44.    Hilland, Shah, and Safady transferred their customer information directly to

17  Farmers' system.  Thus, Hilland, Shah, and Safady had the "ability … to enter consumer

18  information into the seller's sales or customer systems," as discussed in the May 2013

19  FCC Ruling. As such, Hilland, Shah, and Safady was acting as an apparent agent of

20  Farmers.

21     45.    Additionally, Farmers had the ability and the authority to restrict the

22  geographic regions in which its agents could market for Farmers.

23     46.    Finally, the May 2013 FCC Ruling states that called parties may obtain

24  "evidence of these kinds of relationships … through discovery, if they are not

25  independently privy to such information."  *Id.* at 6592-593,  ¶ 46.  Evidence of

26  circumstances pointing to apparent authority on behalf of the telemarketer "should be

27  sufficient to place upon the seller the burden of demonstrating that a reasonable

28  consumer would not sensibly assume that the telemarketer was acting as the seller's

authorized agent." *Id.* at 6593, ¶ 46.

## CLASS ACTION ALLEGATIONS

47.   This suit is properly maintainable as a class action under Rule 23(b)(3).

48.   The definition of the proposed class is (1) All persons who received a soundboard call (2) placed by Farmers, or an entity acting on its behalf, (3) telemarketing Farmers's insurance products (4) on a number assigned to cellular telephone service (5) within four years of the filing of this action.

49.   Given the nature of Farmers's businesses and the nature of the calls, Plaintiffs estimate the class contains hundreds or thousands of members.

50.   Plaintiffs have no conflicts of interest with the class and will provided adequate representation.

51.   Plaintiffs' counsel are experienced TCPA and class action litigators who will also adequately represent the class.

52.   There are numerous questions of law and fact common to the class and capable of classwide resolution, including (a) whether soundboard calls use a prerecorded voice and (b) whether Farmers is vicariously liable for the calls.

53.   Plaintiffs' claims are also typical of the class.  They received the same type of soundboard call promoting Farmers's products as every other class member and are not subject to unique defenses.

54.   Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because the issues of law and fact that are common for the class predominate of any individual issues that Defendants' might raise.

55.   If certified, notice of this proceeding can be directed to the class via a direct mailing to the persons whose telephone numbers appear in the relevant dialer records.

## COUNT ONE
## CALLS MADE IN VIOLATION OF 47 U.S.C. § 227(b)(1)(A)

56.   Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

57.     Defendants placed telemarketing calls using a prerecorded voice to Plaintiffs' cellular telephone numbers in violation of 47 U.S.C. § 227(b)(1)(A).

58.     These calls were placed without Plaintiffs' prior express written consent as required by 47 C.F.R. § 64.1200(a)(2).

59.     As a result of Defendant's violations, Plaintiffs are entitled to injunctive relief to enjoin further calls to his number. 47 U.S.C. § 227(b)(3).

60.     As a result of Defendant's violations, Plaintiffs is entitled to statutory damages. 47 U.S.C. § 227(b)(3);

61.     As a result of Defendant's knowing or willful violations, the Court may award up to $1,500 in statutory damages per call. 47 U.S.C. § 227(b)(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor, and in favor of the proposed class, and against Defendants for:

a. An injunction requiring Defendants to cease further calls to Plaintiffs' cellphones;

b. An award of statutory damages in the amount of $1,500.00 for each and every call, but in no event less than $500.00 per call;

c. An award of Plaintiffs' attorneys' fees, litigation expenses and costs of suit; and

d. Such further and other relief the Court deems reasonable and just.

///
///
///
///
///
///
///
///

1

## <u>JURY DEMAND</u>

2
      Plaintiffs demand trial by jury.

3

4

                        Respectfully submitted,

5

                        ADAM J SCHWARTZ, ATTORNEY AT LAW

6

7

8

9
Dated: April 12, 2021                By: _____

10
                            Adam J Schwartz

11

12
                        Anthony I. Paronich (*subject to application for admission pro hac vice*)
PARONICH LAW, P.C.

13
350 Lincoln Street, Suite 2400
Hingham, MA 02043

14
Telephone: (617) 485-0018

15
Facsimile: (508) 318-8100
Email: anthony@paronichlaw.com

16

17

18
*Attorney for Plaintiffs William Loftus, Deborah Schick and the Proposed Class*

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT